# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Benjamin Cooper, | : | CIVIL ACTION |
| Plaintiff | : | No._____ |
| | : | |
| vs. | : | |
| | : | |
| Medical Director Letizio, E. Caligiuri, | : | 42 U.S.C.§§981, 1983, 1985, |
| Well Path/Correct Care, Dr. Basil, | : | 1986 |
| Dr. Kaminsky, Ms. Darlin, Britney | : | |
| Huner, Deputy Hensley, Physical | : | |
| Therapist John Doe, Superintendent | : | |
| J. Terra, D. Varner, Sick Call Doctors | : | |
| John/Jane Doe 1-10, PA. Dept. of | : | |
| Corrections, CRNP Senkowski | : | |
| Defendants | : | |

## CIVIL COMPLAINT

## I.    INTRODUCTION

The plaintiff files his Civil Complaint/Action against Defendants in their official and private capacities. The Plaintiff is seeking medical treatment in the form of the necessary knee surgeries, compensatory damages, emotional damages and punitive damages, attorney fees and all other damages allowed by law.

1

## II.    JURISDICTION

1.    This Court has jurisdiction over this matter pursuant to: 28 U.S.C. §§ 1331 AND 1334.

2.    This Court has supplemental jurisdiction over this matter pursuant to: 28 U.S.C. § 1367.

3.    This Court has jurisdiction over this matter pursuant to: U.S. Const. 8th and 14th Amendments, Title 4 of the Civil Rights Act of 1964, 42 U.S.C. §1983, 1985 and 1986, 18 PA.C.S. § 8522.

## III.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.    The Plaintiff has fully exhausted all of his administrative remedies, via PaDOC Grievance System.

## IV.    PARTIES

5.    Plaintiff: Benjamin Cooper, Inst. No. GE-0213, is currently located at: SCI-Phoenix, 1200 Mokychic Drive, Collegeville, Pa. 19426.

6.    Defendants: D. Varner, Pa. Dept. of Corrections, is located at: 1920 Technology Pkwy., Mechanicsburg, Pa. 17050.

7.    Defendants: J. Terra, is located at: SCI-Phoenix, 1200 Mokychic Drive, Collegeville, Pa. 19426.

8.    Defendants: Medical Director Letizio, E. Caligiuri, Dr. Basil, Dr. Kaminsky, Ms. Darlin, Britney Huner, Deputy Hensley, Physical Therapist John Doe, CRNP Senkowski, Superintendent J. Terra, Sick Call Doctors John/Jane Doe 1-10 is located at: SCI-Phoenix, 1200 Mokychic Drive, Collegeville, PA 19426.

## V.    FACTS

9.   The Plaintiff has been dealing with right knee problems, pain and complications since 2013 which began to limit his mobility. He saw an orthopedic specialist in 2016 who originally recommended physical therapy but told the medical staff that if the Plaintiff's knee got worse then he was to be brought to him at the hospital.

10.   However, while at SCI-Graterford and then later at SCI-Phoenix the Plaintiff continued to suffer from right knee problems, pain and complications, and as a result he developed left knee problems, pain and complications along with swelling in both of his knees. The swelling got so bad that both of Plaintiff's legs would sweel up, from his knees on down, if he was on his feet for too long. This would further limit his mobility and slow his movements drastically.

11.   Between the 2016 orthopedic visit up until now the Plaintiff has been to the medical department well over 100 times due to his knees which had no effect, and has personally spoken to Defendants Dr. Basil, Dr. Kaminsky, Deputy Hensley, sick call Dr. John/Jane Doe 1-10, and Physical Therapist John Doe but has yet to recieve any real treatment.

12.   Defendant Physical Therapist John Doe has often been quoted as saying that there is nothing he can do for the Plaintiff, but fails to recommend further treatment. The Plaintiff was never sent to, nor has seen another orthopedic specialist since 2016, and instead was simply given a cane and wheelchair. The Plaintiff spoke to Defendant Deputy Hensley about the medical deaprtment not sending him out for proper treatment since 2016, and ignoring his medical concerns but the deputy failed to investigate and rectify the situation.

13.   Between March 1st and April 12th of 2013 the Plaintiff's knees gave out on him yet again on two more occassions, once while leaving

from work and returning to the block he was housed on, and again returning from getting his morning medication. As a result he was restricted to a wheelchair whenever he was to leave the unit, and yet still was refused proper treatment by being sent out to an orthopedic specialist.

14.    Also during this time he was prescribed Tylenol 3s by Defendant Dr. Kaminsky which didn't mix with his other medications and had him feeling disoriented and weak to the point he had to be rushed to the medical department from work and was placed in the Special Observation Unit for a week while the medication passed through his system. When Plaintiff originally reported this to the sick call doctor he wasn't taken off of the Tylenol but instead was given more medications to try to counteract what the Tylenol was doing to him.

15.    On August 9, 2016, the Plaintiff had an MRI on his right knee which revealed no joint effusion/baker's cyst, mild nonspecific marrow edema, inferior pole of the patella/focal high, T2 signal seen involving the proximal patella tendon/bi-partite patella present and it has only gotten worse since then. Where it was one knee troubling him now it is both of his knees because of the delay in treatment and ignoring the recommendations of an outside medical provider for over 7 years.

16.    In or about February of 2023, right before the Plaintiff recieved more steriod shots in his knees by Defendant Dr. Basil, the Plaintiff notified him that the steriod shots were not working, and Dr. Basil told the Plaintiff that he would recommend that the Plaintiff go see an orthopedic specialist. On or about April 12, 2023, Dr. Kaminsky, during a sick call visit, also told the Plaintiff that he would recommend that the Plaintiff go see an orthopedic specialist.

17.   On May 11, 2023, Plaintiff sent a DC-135A (request slip) to Defendant Britney Huner, the Healthcare Administrator, seeking information about his orthopedic visit, and she responded back to the Plaintiff that he had no consult for this. On June 1, 2023, the Plaintiff went back to sick call, and had it confirmed that neither Defendants Dr. Basil nor Dr. Kaminsky had ever recommended that the Plaintiff be taken to see an orthopedic specialist. See Appendix "B".

18.   CRNP Senkowski, who Plaintiff saw at the June 1, 2023, sick call visit said that she would recommend it for the Plaintiff after seeing his medical charts. While it has since been approved later that same month, Plaintiff was still never taken, nor has been taken as of yet, to see an orthopedic specialist.

19.   On June 4, 2023, the Plaintiff filed a grievance at No. 1037702, complaining that the defendants are refusing to comply with his medical recommendations from an outside medical provider and requested treatment along with monetary damages. [See: Appendix "A", PL'T Multiple Grievances].

20.   On June 22, 2023, Defendant E. Caligiuri upheld in part and denied in part the Plaintiff's grievance stating that "I was able to look into the medical record and noted that the last physical therapy was on 4/3/23. At that time, the physical therapist recommend further medical consult secondary to DJD. On 6/1/23 you were seen by CRNP Senkowski at which time she saw the recommendation from the physical therapist and spoke to the medical team regarding an orthopedic consult. it was on 6/16/23 that Dr. Bora ordered the consults...Due to the length of time that it took from April of 2023 until June of 2023 to have the order placed for a consult you will be partially upheld. Due to there being a plan in place for treatment your grievance will be denied as the request was not ignored by the

5

medical staff as you stated in your grievance." And Defendant K. Owens read and approved this. [See: Appendix "A", PL'T Multiple Grievances].

21.    Defendant J. terra became aware of the Plaintiff's medical complaint and concerns via the grievance system on 6/30/23. Instead of correcting the problem the defendant upheld the response.

22.    Defendant John/Jane Doe, Secretary of the Department of Corrections, became aware of the Plaintiff's medical complaint and concerns via the grievance system on 7/21/23. Instead of correcting the problem the defendant refuses to respond.

23.    Defendant D. Varner became aware of the Plaintiff's medical complaint and concerns via the grievance system on 7/21/23. Instead of correcting the problem the defendant upheld the response.

24.    The Defendants, E. Caligiuri and J. Terra, both, agree that "due to the length of time that it took from April of 2023 until June of 2023 to have the order placed for a consult you will be partially upheld. Yet due to there being a plan in place for treatment your grievance will be denied as the request was not ignored by the medical staff as you stated in your grievance." They are mistaken and under the assumption that because Defendant Caligiuri looked into the medical records and noted that the last physical therapy was on 4/3/23, and that at that time, the physical therapist recommend further medical consult secondary to DJD; that that was the only time that he had recommended further medical consult. When in fact a review of the medical records will reflect that the physical therapist had recommended further consult on numerous occassions but that they were all ignored by the medical department.

6

25.    In August of 2023 at a sick visit the Plaintiff was seen by Defendant CRNP Jane Doe where she attempted to have him sign a waiver form to go to SCI-Benner for an MRI. This was Well Path's way of keeping everything in house. The Plaintiff informed Defendant CRNP Jane Doe that he did not feel comfortable going to SCI-Benner when he was already informed by Defendant Britney Huner that he had to go back to Einstein Hospital due to the fact he was already seen by their orthopedic specialist about his knees, and for the fact that their orthopedic specialist had informed the prison to bring him to Einstein Hospital if the Plaintiff's knees became worse. The Plaintiff informed Defendant CRNP Jane Doe that he was in no way refusing treatment but that he only wished for them to follow the orthopedic specialist's request along with the protocols that Defendant Britney Huner had stated that were in place for people needing special treatments such as an MRI.

26.    On February 7, 2024, the Plaintiff went to sick where he asked about the delay in being sent to an orthopedic specialist. Defendant CRNP Senkowski looked into the computer and notified the Plaintiff that Defendant Medical Director Letizio had put in the notes that the Plaintiff would not being going out for an MRI because he had refused treatment. Defendant CRNP Senkowski then looked up the notes from the August 2023 sick call visit and noted that she didn't see anything about the Plaintiff refusing treatment so she would call Defendant Medical Director Letizio to see if she could push for the Plaintiff being sent out for an MRI at Einstein Hospital. The Plaintiff was told by the Defendant CRNP Senkowski that Defendant Medical Director Letizio had told her that since the Plaintiff didn't want to go where we wanted to send him that he would not be going anywhere.

27.    Defendant CRNP Senkowski did not report or try to stop her colleague, Defendant Medical Director Letizio, from denying the Plaintiff medical treatment knowing that the Plaintiff never refused medical treatment to began with.

28. This is a violation of the 8th Amendment, deliberate indifference, because the Medical Department knew they didn't give the proper treatment. Superintendent Joseph Terra also knew of this by way of upholding in part and denying in part grievance No. 1037702. The outside doctor told the medical staff to send the Plaintiff to the hospital if his knees had gotten worse.

29. There is a high percentage of damage in Plaintiff's right knee and an even higher percentage of damage in his left knee. The Plaintiff kept putting in sick call slips in, and nothing was done until June of 2023 and yet still he has been waiting to see an orthopedic specialist

30. Wellpath/Correct Care has established a policy and practice which does not permit inmates to automatically receive the medical care which is prescribed and/or ordered by medical providers. Inmates may only receive medical consultations and/or treatment outside of the prison, which has to be first requested and then approved by the regional medical director, in a process known as "Collegial Review," which is a "system to ensure that Wellpath/Correct Care controls the number of medical consultations and medical care outside of the prison facility, for which it is requirted to bear the cost."

31. Wellpath/Correct Care has established a practice of permitting inmates with well known serious medical conditions to linger for months, even years, without any effort to expedite the required next step of care. Thus, Plaintiff has not seen an orthopedic specialiust since 2016 though his knees has progressively gotten worse.

32. Wellpath/Correct Care does not require its staff or medical providers to timely follow up with patients to ensure that the known serious medical conditions are being treated as ordered, and grants its staff carte blanche to delay care without fear of negative employment consequences. As a

8

result of these two practices of Wellpath/Correct Care inmate care is routinely delayed within the Department of Corrections, sometimes for years, without any medical justification for delay.

VI.   THE PLAINTIFF'S DAMAGES AND INJURIES

33.   Physical Injury - the Plaintiff has suffered physical injuries: complications to his left and right knees, both knees repeatedly giving out on him and in constant pain, he can not run or jump and can bearly walk.

34.   Injury: Psychological and Emotional Trauma - as a result of the Plaintiff's complications to his knees he currently suffers from uncontrollable anxiety attacks, weight gain.

35.   Injury: Psychological and Emotional Trauma - as a result of the Plaintiff's complications to his knees he is unable to kneel and pray as is required by his religion, he is unable to practice his religion.

VII.   STATEMENT OF CLAIMS

36.   The Plaintiff incorporates by reference as though fully set forth all the averments set out in paragraphs 1-32.

### Count 1: The Defendants Violated The Plaintiff's 8th Amendment Rights

37.   According to the **U.S. Constitution 8th Amendment** the Plaintiff has a constitutionally protected right to the prohibition against cruel and unusual punishment. However, the Defendants subjected the Plaintiff to cruel and unusual punishment when they intentionally and maliciously:

I) **Deliberate Indifference** - The Defendants were deliberately indifferent to the Plaintiff's medical condition when they repeatedly refused to

9

recommend further medical consult in an orthopedic specialist for over seven years.

II) **Deliberate Indifference** - The Defendants were deliberately indifferent to the Plaintiff's medical condition when they ignored an orthopedic specialist's recommendation for over seven years and as a result of their delay, the Plaintiff suffers serious complications in both of his knees.

III) **Deliberate Indifference** - The Defendants were deliberately indifferent to the Plaintiff's medical condition when they repeatedly recommended physical therapy and pain medications knowing that the Plaintiff's complications were beyond that for over seven years.

IV) **Cruel and Unusual Punishment** - The Plaintiff suffered cruel and unusual punishment when Defendants, knowing full well what the Plaintiff has been suffering, for years failed to act and provide the proper treatment.

V) **Cruel and Unusual Punishment** - The Plaintiff suffered cruel and unusual punishment when Defendants, knowing full well what the Plaintiff has been suffering for years, acted as if they were going to give the Plaintiff treatment, going as far as to approve Plaintiff to go out for a consult in June of 2023, but never having the intentions to truly send him out.

**Count 2: The Defendants Violated The Plaintiff's 14th Amendment Rights and U.S.C. §1981**

38.   According to **U.S. Constitutuion 14th Amendment** and **42 U.S.C. §1981**, the Plaintiff is a citizen of the United States, who has a constitutional right to the equal protection of the law. The Defendants were supposed to provide the Plaintiff with reasonable care. But, instead, these Defendants deprived the Plaintiff of equal protection when they intentionally and maliciously

10

disregarded the Plaintiff's medical condition for over seven years until his knees started giving out on him.

### Count 3: The Defendants Violated The Plaintiff's Civil and Human Rights

39. According to **Title 4 of the Civil Rights Act of 1964** and **42 U.S.C. §1983**, the Plaintiff is entitled to his basic civil and human rights which is afforded to every citizen of the United States.

40. All of the Defendants knew about the Plaintiff's medical condition and complications becuase they have/had direct access to the Plaintiff's medical records, because the Plaintiff informed them through medical visits and grievances, and because their response to the grievance was to uphold it in part due to the fact that there was a delay.

41. The Plaintiff is entitled to not have the Defendants put his health and life in jeopardy, which they did when they ignored a medical provider's 2016 order, and refused to send the Plaintiff out to see an orthopedic specialist to receive treatment that was beyond their capabilities. The Defendants put the Plaintiff in a high risk situation where his knees gave out on him numerous times, and he fell hitting the concrete ground each time; and is now relegated to a walking cane and a wheelchair when he has to leave the unit. **The Plaintiff could have hit/smacked his head against the ground and went into a seizure or worse. Thus they put his life in jeopardy.**

42. The Defendants worked together to deprive the Plaintiff of his civil and human rights - **to be safe and secure in his person.** The Plaintiff has a constitutional right to recovery damages for the malicious actions of depriving him of his civil liberties to be secure in his person and basic human rights.

## Count 4: The Defendants Violated The Plaintiff's Rights To The Exercise of HIs Civil and Human Rights

43. According to U.S.C. §1985, the Plaintiff has a constitutional right to the protection against the Defendants conspiring together to interfere with his (Plaintiff's) civil rights.

44. Defendants conspired together to the Plaintiff from going out for a consult visit and receiving proper treatment, with the full knowledge that the Plaintiff's knees were drastically getting worse, and that he could have fallen and been seriously injured, which is what almost happened.

45. Defendants had an obligation and should have stopped their colleagues from violating the Plaintiff's protected rights, to be secure in his well being.

## Count 5: The Defendants Failed/Refused to Protect The Plaintiff From Being Victimized By Their Colleagues

46. According to 42 U.S.C. §1986, The Defendants who witnessed his colleagues' intentional and malicious actions **had an obligation to prevent his colleagues from conspiring to deprive the Plaintiff of his property.** But, they neglected to do so when they refused/failed to prevent the conspiracy, and they are now liable for damages.

## VIII.   SUPPLEMENTAL JURISDICTION (28 U.S.C. §1367)

47. The Plaintiff incorporates by reference as though fully set forth all the averments set out in paragraphs 1-43.

## Count 6: The Defendants Acted Negligently To The Plaintiff's Medical Condition

48. According to 42 U.S.C.§8522 (B)(3) - **Negligence**, the defense of sovereign immunity shall not be raised to claims for damages caused by...the care, custody or control of a person. The Defendants failed/refused to exercise reasonable care of the Plaintiff's medical condition by deliberately delaying proper medical treatment for over seven years and where his knees are now giving out on him and he's falling causing more injuries.

### Count 7: The Defendants Committed Criminal Conspiracy Against The Plaintiff

49. According to 18 PA.C.S.§9093 the Defendants committed the crimes of criminal conspiracy when the Defendants, working together, deprived the Plaintiff of his Civil and Human Rights.

50. All of the Defendants knew of the Plaintiff's medical condition and had access to the Plaintiff's medical records. All of the Defendants were aware that the lack of treatment for the Plaintiff was in direct violation of the medical provider's orders and refused to correct it. All of the Defendants violated their oaths of care, custody and control of the residents placed under their supervision. All of the Defendants either lied or tried to cover up the fact that the Plaintiff was being placed in a dangerous situation in which he could fall stricking his head on the concrete and slipping into a seizure or worse.

51. None of the Defendants were fired, investigated, charged or prosecuted for their many crimes, which allowed this type of criminal behavior to continue within the PADOC.

# RELIF SOUGHT

52. **Compensatory Damages:** The Plaintiff request This Court to enjoin the

Defendants to pay the Plaintiff compensatory damages in the amount of $200,000.00 (Two Hundred Thousand Dollars), plus the appropriate interest rate.

53. **Punitive Damages:** The Plaintiff request This Court to enjoin the Defendants to pay the Plaintiff punitive damages in the amount of $200,000.00 (Two Hundred Thousand Dollars), plus the appropriate interest rate.

54.. **Psychological Damages:** The Plaintiff request This Court to enjoin the Defendants to pay the Plaintiff psychological damages in the amount of $100,000.00 (One Hundred Thousand Dollars), plus the appropriate interest rate.

55. **Court Cost/Legal Fees:** The Plaintiff request This Court to enjoin the Defendants to pay the Plaintiff's court cost and legal fees.

56. **All other appropriate damages allowed by law:** The Plaintiff request This Court to enjoin the Defendants to pay the Plaintiff all other appropriate damages allowed by law.

Smart Communications/PADOC
SCI - Phoenix
Benjamin Cooper
GE0213
1200 Mokychic Drive
Collegeville, PA 19426

USMS

Office of The Clerk
U.S. District Court
Phila, PA 19106

RECEIVED
JUN - 3 2024

quadient
IMI
$002.59°
05/28/2024 ZIP 19426
043M312482656
FIRST-CLASS MAIL
US POSTAGE